UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| TYNEISHA FERGUSON, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE J.M. SMUCKER COMPANY,<br><br>Defendant. | CASE NO.:<br><br><br>COMPLAINT<br>(JURY TRIAL DEMANDED) |

# CLASS ACTION COMPLAINT

Plaintiff TYNEISHA FERGUSON ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through counsel, brings this Class Action Complaint against Defendant THE J.M. SMUCKER COMPANY ("Defendant").

## INTRODUCTION

1. This consumer class action arises out of Defendant's unlawful and unreasonable conduct directly causing a Salmonella outbreak impacting potentially thousands of U.S. consumers who purchased and/or consumed certain lots of Jif peanut butter.

2. On May 20, 2022, Defendant announced that it was "recalling select Jif® peanut butter products sold in the U.S. due to potential salmonella contamination." *See* J.M. Smucker Co. Company Announcement, attached hereto as Exhibit A. "The recalled peanut butter was distributed nationwide in retail stores and other outlets" and include the lot codes 1274425–2140425. *Id*.

3. Also on May 20, 2022, the Food and Drug Administration ("FDA") published "Outbreak Investigation of Salmonella: Peanut Butter (May 2022)", attached hereto as Exhibit B, notifying the public of its investigation in conjunction with the U.S. Centers for Disease Control and Prevention ("CDC") and local partners into a "multistate outbreak of *Salmonella* Senftenberg infections linked to certain Jif brand peanut butter products produced at the J.M. Smucker Company facility in Lexington, Kentucky."

4. According to the CDC, as of May 25, 2022, there were 16 reported cases of *Salmonella* connected to Defendant's Jif—100% of the people who were interviewed reported eating peanut butter prior to becoming ill, and 90% of those interviewed reported which brand peanut butter and all of them identified Jif. As a result, "Epidemiological evidence indicates that Jif brand peanut butter produced the strain causing illnesses" in the outbreak. *See* 2022 Recalls of Food Products Associated with Peanut Butter from J.M. Smucker Company due to the Potential Risk of Salmonella," attached hereto as Exhibit C.

5. Other products incorporating the contaminated peanut butter are also subject to recalls, such as products sold by Fudgeamentals, Del Monte, Albertsons Companies, Coblentz Chocolate Company, Mary's Harvest fresh Foods Inc., Garden Cut, LLC, TAHER, INC., Country Fresh, Cargill, and Wawa. *See* Exhibit C. These other products, as well as the recalled Jif products, are collectively referred to as the "Contaminated Products."

6. The FDA advised purchasers of the Contaminated Products not to eat them. *See* Exhibit B.

7. However, prior to the recall, Plaintiff purchased Jif brand peanut butter and consumed it. Shortly after consuming it, Plaintiff became ill.

8. Defendant's violations of laws and regulations prohibiting the sale of contaminated and misbranded food, deviations from reasonable manufacturing and production standard practices, and failures to ensure the quality and safety of the Contaminated Products prior to sale directly caused Plaintiff's and Class members' economic and noneconomic losses.

9. Accordingly, Plaintiff brings this suit on behalf of himself and the Class of similarly situated individuals for out-of-pocket losses, compensation, personal injuries, medical and healthcare bills, emotional distress, pain and suffering, and all other relief to which they are lawfully entitled, resulting from Defendant's sale of the Contaminated Products.

## PARTIES

10. Plaintiff is a citizen of Illinois.

11. Defendant is an Ohio corporation, and its principal production plant for the Contaminated Products is located in Lexington, Kentucky.

## JURISDICTION AND VENUE

12. This Court has personal jurisdiction over Defendant because Defendant's principal production plant for the Contaminated Products is located in Lexington, Kentucky.

13. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d).  As set forth below, the proposed Class includes more than 100 individuals, and the amount of controversy, in the aggregate, exceeds the sum of $5,000,000 exclusive of interest and costs, given Defendant's market reach and the approximate number of potential Class members in the United States.  Based on CDC data, proposed Class members are citizens of states different from Defendant.

14. Venue is proper in this District under 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to the claims occurred in this District.

## **FACTUAL ALLEGATIONS**

15. According to the CDC, *Salmonella* is a group of bacteria that can cause a gastrointestinal illness and fever called salmonellosis. *Salmonella* can be spread by food handlers who do not wash their hands and/or the surfaces and tools they use between food preparation steps, and when people eat raw or undercooked foods. *Salmonella* can also spread from animals to people. People who have direct contact with certain animals, including poultry and reptiles, can spread the bacteria from the animals to food if they do not practice proper hand washing hygiene before handling food. Pets can also spread the bacteria within the home environment if they eat food contaminated with *Salmonella*.

16. Most people infected with *Salmonella* will begin to develop symptoms 12 to 72 hours after infection. Salmonellosis usually lasts four to seven days. Most people with salmonellosis develop diarrhea, fever, and abdominal cramps. More severe cases of salmonellosis may include a high fever, aches, headaches, lethargy, a rash, blood in the urine or stool, and in some cases may become fatal. The CDC estimates that approximately 450 persons in the United States die each year from acute Salmonellosis.

17. Due to the range in severity of illness, people should consult their healthcare provider if they suspect that they have developed symptoms that resemble a *Salmonella* infection. Most people who get ill from *Salmonella* have diarrhea, fever, and stomach cramps. Most people recover without specific treatment and should not take antibiotics. Antibiotics are typically used only to treat people who have severe illness or who are at risk for it. Some people's illness may be so severe that they need to be hospitalized.

18. According to the CDC's website as of the date of this filing, the CDC has connected the Contaminated Products to 16 cases in 12 states resulting in 2 hospitalizations. The CDC

cautions that "[t]he true number of sick people in an outbreak is also likely much higher than the number reported. This is because many people recover without medical care and are not tested for *Salmonella*." https://www.cdc.gov/salmonella/senftenberg-05-22/epi.html.

19. The Contaminated Products are present throughout the United States.

20. The first reported case of Salmonellosis from the Contaminated Products occurred in February 20, 2022. Given the rapidly developing story, cases are likely occurring as of the filing of this Complaint.

*Defendant's Jif Peanut Butter*

21. Defendant manufactures, distributes, advertises, markets, and sells Jif peanut butter ("Jif"). There are many sizes and varieties of Jif available. The contaminated varieties are listed on Exhibits A and B.



5

22. The Contaminated Products reportedly originated from Defendant's Lexington, Kentucky facility, and were distributed nationwide. The Contaminated Products include those with lot codes 1274425 – 2140425. Lot codes are included alongside the "best-if-used-by" date on the product.

23. On May 20, 2022, Defendant issued a recall, informing purchasers and consumers of Jif with lot codes 1274425–2140425 that their peanut butter was contaminated with *Salmonella*. The FDA instructed consumers not to eat the products. *See* Exhibit B.

24. Defendant also distributed the contaminated peanut butter for use as an ingredient in other products, such as by Fudgeamentals, Del Monte, Albertsons Companies, Coblentz Chocolate Company, Mary's Harvest fresh Foods Inc., Garden Cut, LLC, TAHER, INC., Country Fresh, Cargill, and Wawa. Those products were also recalled. *See* Exhibit C.

### *Defendant's Unlawful Conduct*

25. Defendant directs, controls, and participates in the manufacturing and packaging of the Contaminated Products and the peanut butter ingredients in them. As part of that direction, control, and participation, Defendant determines and is responsible for setting manufacturing and quality standards, proper hygiene of employees, maintaining clean facilities through reasonable and necessary health and safety measures, and ensuring that the products manufactured and sold to consumers comply with federal, state, and local laws and regulations.

26. Defendant violated state and federal laws and rules prohibiting the sale of adulterated, contaminated, and misbranded foods; and failed to exercise reasonable care in setting manufacturing and quality standards, ensuring proper hygiene of employees and equipment, maintaining clean facilities through reasonable and necessary health and safety measures, and

ensuring that the products manufactured and sold to consumers comply with federal, state, and local laws and regulations.

27. As a result of Defendant's failures, acts, and omissions, Plaintiff and Class members suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the Contaminated Products, personal injuries, emotional distress, and annoyance.

## CLASS ALLEGATIONS

28. **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23, on behalf of a nationwide class of similarly situated individuals and entities ("the Class"), defined as follows:

> All persons in the United States who purchased or consumed the Contaminated Products.

29. **Illinois Subclass Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23, on behalf of a subclass of similarly situated individuals and entities ("Illinois Subclass"), defined as follows:

> All persons in Illinois who purchased or consumed the Contaminated Products.

30. Excluded from the Class and/or Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class and/or Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or

otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

31. **Numerosity**: The Class and Subclass are each so numerous that joinder of individual members would be impracticable. While the exact number of Class and Subclass members is presently unknown and can only be ascertained through discovery, Plaintiff believes that there are thousands of Class and Subclass members, if not more. Jif was the leading peanut butter brand in the United States in 2017 by a wide margin, controlling over 30 percent of the market in that year. This market share translates into sales of over $587 million in 2017. https://www.statista.com/statistics/586957/market-share-peanut-butter-brands-in-the-united-states/.

32. **Commonality and Predominance**: There are several questions of law and fact common to the claims of Plaintiff and Class members, which predominate over any individual issues, including:

    a. Whether Defendant failed to exercise reasonable care in manufacturing the products;

    b. Whether the contamination occurred as a result of Defendant's failure to exercise reasonable care in manufacturing the products;

    c. Whether Defendant misrepresented to Plaintiff and Class members that the Contaminated Products were safe for human consumption and did not contain *Salmonella*;

    d. Whether Defendant omitted and concealed the presence of *Salmonella* in the Contaminated Products;

  e.  Whether the presence of *Salmonella* in the Contaminated Products is a material fact to Plaintiff and Class members;

  f.  Whether Defendant's conduct constitutes unlawful acts or practices under state consumer protection and unfair or deceptive practices statutes asserted herein;

  g.  Whether Defendant's conduct constitutes fraudulent concealment;

  h.  Whether Defendant was unjustly enriched by its improper conduct;

  i.  Whether Plaintiff and Class members are entitled to injunctive relief to (1) require Defendant to cease its unlawful and deceptive practices; and (2) to implement and maintain adequate manufacturing procedures, final product testing procedures, and ingredient sourcing and inspection practices to ensure its products do not become contaminated; and

  j.  Whether Defendant's conduct resulted in Defendant unjustly retaining a benefit to the detriment of Plaintiff and Class members, and violated the fundamental principles of justice, equity, and good conscience.

33. **Typicality**: Plaintiff's claims are typical of the claims of the proposed Class. All claims are based on the same legal and factual issues regarding Defendant's failures to exercise reasonable care in manufacturing, and Defendant's misrepresentations and omissions concerning the presence of *Salmonella* in the Contaminated Products.

34. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the proposed Class, and Plaintiff does not have any interests antagonistic to those of the proposed Class. Plaintiff has retained competent counsel experienced in the prosecution of this type of litigation.

35. **Superiority**: A class action can best secure the economies of time, effort and expense, and promote uniformity. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. Individual actions are not feasible and it is unlikely that individual members of the Class will prosecute separate actions. The trial and the litigation of Plaintiff's claims as a class action will be manageable.

### COUNT I
### (On Behalf of Plaintiff and the Illinois Subclass)
### Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act
### (815 ILCS 505/1, *et seq.*)

36. Plaintiff repeats and realleges paragraphs 1–35, as if fully set forth herein.

37. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, provides protection to consumers by mandating fair competition in commercial markets for goods and services.

38. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". 815 ILCS 505/2.

39. The ICFA applies to Defendant's acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

40. Defendant is a "person," as defined by 815 ILCS 505/1(c).

41. Plaintiff and each member of the Illinois Subclass are "consumers," as defined by 815 ILCS 505/1(e), because they purchased Contaminated Products.

10

42. The Contaminated Products are "merchandise," as defined by 815 ILCS 505/1(b).

43. Defendant made false and fraudulent statements, and misrepresented, concealed, and omitted material facts regarding the Contaminated Products, including the misrepresentation that the Contaminated Products were safe for human consumption, and the omission that the Contaminated Products contained *Salmonella*.

44. Defendant's aforementioned misrepresentations, omissions, and concealment regarding the Contaminated Products constitute deceptive and unconscionable acts or practices prohibited by the DTPA.

45. Defendant's aforementioned misrepresentations, omissions, and concealment possess the tendency or capacity to mislead and create the likelihood of consumer confusion.

46. Defendant's aforementioned misrepresentations, omissions, and concealment were used or employed in the conduct of trade or commerce, namely, the marketing, sale, and distribution of the Contaminated Products to Plaintiff and Illinois Subclass members.

47. Defendant's aforementioned misrepresentations, omissions, and concealment are unconscionable because they offend public policy and/or cause substantial injury to consumers.

48. Defendant's aforementioned conduct is deceptive and unlawful because it violated the Illinois Food, Drug & Cosmetic Act ("IFDCA"), 410 ILCS 620/3–3.3. The Contaminated Products were adulterated and misbranded, in violation of the IFDCA. 410 ILCS 620/2.11; 410 ILCS 620/14(a)(2)(A), (a)(2)(B), (d).

49. Defendant intended that Plaintiff and Illinois Subclass members rely on its respective aforementioned false statements, misrepresentations, omissions, and concealment of material facts in purchasing Contaminated Products.

50. Plaintiff and Illinois Subclass members reasonably relied on Defendant's respective misrepresentations, omissions, and concealment when they purchased the Contaminated Products.

51. Acting as reasonable consumers, had Plaintiff and Illinois Subclass members been aware of the true facts regarding the presence of *Salmonella* in the Contaminated Products, they would have declined to purchase these products.

52. Acting as reasonable consumers, Plaintiff and Illinois Subclass members could not have avoided the injuries suffered by purchasing the Contaminated Products because they did not have any reason to suspect that the products contained *Salmonella*.  Moreover, the detection of *Salmonella* in food requires rigorous and specialized scientific testing that goes well beyond the level of inquiry a reasonable consumer would make into the issue, and, in any event, such testing was not possible without Plaintiff and Illinois Subclass members first purchasing the Contaminated Products.

53. As a direct and proximate result of Defendant's false, misleading, and deceptive acts and practices set forth above, Plaintiff and members of the Illinois Subclass suffered damages by purchasing the Contaminated Products because they would not have purchased them had they known the truth, and they received a product that was worthless because it contains unsafe *Salmonella*.

54. As a result of Defendant's failures, acts, and omissions, Plaintiff and Illinois Subclass members suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the Contaminated Products, personal injuries, emotional distress, and annoyance.

55. These damages were reasonably foreseeable because the Contaminated Products are known to cause illnesses.

### COUNT II
### Negligence
### (On Behalf of Plaintiff and the Class)

56. Plaintiff repeats and realleges paragraphs 1–35, as if fully set forth herein.

57. Defendant manufactured distributed, marketed, promoted, and sold the Contaminated Products.

58. Defendant owned a duty of care to Plaintiff and Class members to exercise reasonable care in manufacturing, distributing, marketing, promoting, and selling the Contaminated Products, including a duty to prevent the sale of food products contaminated with *Salmonella*.

59. Plaintiff and Class members are reasonable consumers who rely on Defendant to manufacture, distribute, market, promote, and sell its food products in a safe and reasonable manner in compliance with food health and safety laws.

60. Defendant was aware that Plaintiff and Class members rely on Defendant to manufacture and sell safe food products, and in the case of the Contaminated Products, that they are ready to eat.

61. Defendant breached its duty of care by:

    a. violating state and federal laws and rules prohibiting the sale of adulterated, contaminated, and misbranded foods, which laws were designed to protect the class of persons to which Plaintiff and Class members belong;

    b. failing to exercise reasonable care in setting manufacturing and quality standards, and ensuring proper hygiene of employees and equipment;

    c.    failing to maintain clean facilities through reasonable and necessary health and safety measures;

    d.    failing to ensure that the products that left its facilities were safe for human consumption; and

    e.    failing to warn Plaintiff and Class members that the Contaminated Products were not safe to eat and were contaminated with *Salmonella*.

62. As a direct and proximate result of Defendant's failures set forth above, Plaintiff and Class members suffered damages by purchasing the Contaminated Products because they would not have purchased them had they known the truth, and they received a product that was worthless because it contains unsafe *Salmonella*.

63. As a result of Defendant's failures, acts, and omissions, Plaintiff and Illinois Subclass members suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the Contaminated Products, personal injuries, emotional distress, and annoyance.

64. These damages were reasonably foreseeable because the Contaminated Products are known to cause illnesses.

**COUNT III**
**Strict Product Liability**
**(On behalf of Plaintiff and the Class)**

65. Plaintiff repeats and realleges paragraphs 1–35, as if fully set forth herein.

66. Defendant is in the business of selling Jif peanut butter to consumers.

67. The Contaminated Products sold by Defendant contained harmful *Salmonella* when they left Defendant's custody and control.

68. Despite having a legal duty to do so, Defendant failed to warn or disclose to customers—including Plaintiff and Class members—that the Contaminated Products contained contaminants, specifically *Salmonella*.

69. The Contaminated Products are unreasonably dangerous and unsafe for human consumption because *Salmonella* causes illness, infections, and in some cases severe consequences such as death.

70. The Contaminated Products obtained by Plaintiff and Class members were in a defective and unreasonably dangerous condition at the time they were obtained by Plaintiff and Class members.

71. Plaintiff and Class members purchased and/or consumed the Contaminated Products that they obtained from Defendant.

72. As a result, Plaintiff and Class members were immediately harmed because they consumed harmful levels of *Salmonella*.

73. As a direct and proximate result of Defendant's failures set forth above, Plaintiff and Class members suffered damages by purchasing the Contaminated Products because they would not have purchased them had they known the truth, and they received a product that was worthless because it contains unsafe *Salmonella*.

74. As a result of Defendant's failures, acts, and omissions, Plaintiff and Illinois Subclass members suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the Contaminated Products, personal injuries, emotional distress, and annoyance.

75. These damages were reasonably foreseeable because the Contaminated Products are known to cause illnesses.

## COUNT IV
### Breach of Implied Warranty of Merchantability
### (On behalf of Plaintiff and the Class)

76. Plaintiff repeats and realleges paragraphs 1–35, as if fully set forth herein.

77. Defendant, as the seller of Jif peanut butter, impliedly warranted that the Contaminated Products were safe for human consumption, were not adulterated, and did not contain *Salmonella*.

78. Contrary to those implied warranties, the Contaminated Products which Defendant manufactured, distributed, and sold were in fact adulterated, and contained *Salmonella*. Defendant breached the implied warranty of merchantability.

79. Plaintiff and Class members purchased and/or consumed the Contaminated Products in reliance upon Defendant's implied warranties.

80. Had Plaintiff and Class members known that the Contaminated Products they purchased and consumed were adulterated and contained *Salmonella*, they would not have purchased or consumed them.

81. As a direct and proximate result of Defendant's breaches of warranties set forth above, Plaintiff and Class members suffered damages by purchasing the Contaminated Products because they would not have purchased them had they known the truth, and they received a product that was worthless because it contains unsafe *Salmonella*.

82. As a result of Defendant's failures, acts, and omissions, Plaintiff and Illinois Subclass members suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address

symptoms and consequences of ingesting the Contaminated Products, personal injuries, emotional distress, and annoyance.

83. These damages were reasonably foreseeable because the Contaminated Products are known to cause illnesses.

### COUNT V
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

84. Plaintiff repeats and realleges paragraphs 1–35, as if fully set forth herein.

85. Defendant knew that the presence of *Salmonella* in the Contaminated Products was a material fact to consumers, including Plaintiff and Class members.

86. Because Defendant is responsible for, and controls, the manufacturing, marketing, distribution, and sale of the Contaminated Products, Defendant knew that its omissions and concealment of the presence of *Salmonella* would mislead Plaintiff and Class members, and induce them to buy products that they would otherwise not have been willing to purchase.

87. Acting as reasonable consumers, had Plaintiff and Class members been aware of the true facts regarding the Contaminated Products, they would have declined to purchase them.

88. Acting as reasonable consumers, Plaintiff and Class members could not have avoided the injuries because they did not have any reason to suspect that the Contaminated Products were contaminated. Moreover, due to the products being sold as ready to eat, Plaintiff and Class members were not required to cook or prepare the food to prevent contamination.

89. As a direct and proximate result of Defendant's misrepresentations and omissions, Plaintiff and Class members conferred a benefit on Defendant—*i.e.*, the money that they paid under the belief that these products were safe for human consumption.

90. Defendant acquired and retained money belonging to Plaintiff and Class members as a result of its wrongful conduct. Defendant profited at the expense of Plaintiff and Class members because Plaintiff and Class members paid money for products that were worthless due to the fact that they are not safe for human consumption.

91. Defendant has unjustly received and retained a benefit at the expense of Plaintiff and the Class because Defendant unlawfully acquired profits for worthless (and unsafe) food products while appreciating and knowing that its Contaminated Products were unsafe for human consumption.

92. Defendant's retention of that benefit violates the fundamental principles of justice, equity, and good conscience. Under the principles of equity, Defendant should not be allowed to keep the money rightfully belonging to Plaintiff and the Class members.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of the Class and Subclass, prays for an Order as follows:

- A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class and/or Subclass defined herein;

- B. Designating Plaintiff as representative of the Class and/or Subclass, and designating undersigned counsel as Class Counsel;

- C. Entering judgment in favor of Plaintiff and the Class and/or Subclass, and against Defendant;

- D. Awarding Plaintiff and Class and/or Subclass members all relief to which they are entitled, including awards for their economic and non-economic actual damages, statutory damages, treble damages, enhanced damages, and punitive damages for Defendant's willful and intentional conduct;

- E. Ordering equitable relief, including restitution, disgorgement of any of Defendant's ill-gotten gains, imposing a constructive trust in favor of

Plaintiff and the Class and/or Subclass members, and awarding those amounts to Plaintiff and the Class and/or Subclass members;

F. Granting injunctive relief, including but not limited to, an order: (1) requiring Defendant to cease its unlawful and deceptive practices; and (2) requiring Defendant to implement and maintain adequate manufacturing procedures, final product testing procedures, and ingredient sourcing and inspection practices to ensure its products are safe for human consumption;

G. Awarding Plaintiff and the Class and/or Subclass attorneys' fees and costs, including interest thereon, as allowed or required by law; and

H. Granting all such further and other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts so triable.

Respectfully submitted,

By: /s/ Brian D. Flick
Brian D. Flick, Esq. (0095244)
Marc E. Dann (0039425)*
Michael A. Smith, Jr. (0097147)*
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
(216) 373-0539 phone
(216) 373-0536 facsimile
notices@dannlaw.com
* *Pro Hac Vice Applications Anticipated*

Thomas A. Zimmerman, Jr.
*tom@attorneyzim.com*
Sharon A. Harris
*sharon@attorneyzim.com*
Matthew C. De Re
*matt@attorneyzim.com*
Jeffrey D. Blake
*jeff@attorneyzim.com*
*Pro Hac Vice Applications Anticipated*
**ZIMMERMAN LAW OFFICES, P.C.**

77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com

*Counsel for Plaintiff and the Class and Subclass*